**EXHIBIT B**

```
                                          RECEIVED
                                          JUL 1 7 2019
                                          TEAMSTERS LOCAL 853
```

*In the Matter of Grievance Appeal:*    )
                                        )
             -between-                  )
                                        )
COMPASS TRANSPORTATION                  )
                                        )    FINDINGS
                         EMPLOYER       )
                                        )    CONCLUSIONS
             -and-                      )
                                        )    AWARD
                         UNION          )
TEAMSTERS, LOCAL 853                    )
                                        )    DAVID B. HART
MICHAEL HENDERSON: GRIEVANT             )    ARBITRATOR
_____)

HEARING HELD

May 13, 2019

Oakland, California

REPRESENTING:

    COMPASS TRANSPORTATION

        James N. Foster, Esq.
        McMahon Berger, P. C.

REPRESENTING:

    MICHAEL HENDERSON

        Susan K. Garea, Esq.
        Kena C. Cador
        Beeson, Tayer & Bodine

## JURISDICTION

This Hearing arises pursuant to the Collective Bargaining Agreement (hereinafter may be referred to as the "Agreement") between Compass Transportation (hereinafter may be referred to as the "Employer") and the Teamsters, Local 853, (hereinafter may be referred to as the "Union").

On November 28, 2018, a Grievance was filed by Michael Henderson (hereinafter may be referred to as the "Grievant") alleging the Employer violated the agreement by discharging him.

Unable to reach a settlement, David B. Hart was selected by the parties from a list incorporated within the Agreement, to act as an impartial Arbitrator and empowered him to render a decision in accordance with the Agreement.

The Grievant was well represented, and afforded all rights associated with an impartial hearing.

The hearing was held on the dates set forth above and the parties had ample time to present evidence including witnesses and documents.

All witnesses were sworn and the parties submitted written closing arguments which were received by the Arbitrator on or before July 3, 2019.

The parties were unable to agree as to the issue and left the matter to the Arbitrator to decide.

## ISSUE(S)

**"DID COMPASS TRANSPORTATION VIOLATE ANY PROVISIONS OF THE PARTIES COLLECTIVE BARGAINING AGREEMENT CONCERNING THE DISCHARGE OF MICHAEL HENDERSON IF SO, WHAT SHALL BE THE REMEDY?**

## BACKGROUND

On November 6, 2018, the Employer <u>sent a letter to the Grievant that said in pertinent part:</u>

"Please be advised that we have reason to believe that you may have engaged in conduct which violates our reasonable standards and expectations. Specifically, you may have engaged in the following possible misconduct:

Inappropriate behavior toward client passengers.

Accordingly, this is your opportunity to "tell us your side of the story.".........

The Grievant of November 6, 2018, relied that he did not recall any such acts of misconduct.

On November 12, 2018, the Employer terminated the Grievant for misconduct

## THE GRIEVANCE

On November 28, 2018, the Grievant filed the following Grievance: Article 17- Penalties & Discharge were violated, which resulted in "Unjustly Terminated."

The remedy called for involved reinstatement and back pay.

## RELEVANT PROVISIONS OF THE AGREEMENT
## ARTICLE 14-NON-DISCRIMINATION

<u>Section 1:</u>   The Company and the Union are committed to providing a work environment that is free of discrimination, unlawful harassment and retaliation. No officer, representative, shop steward or member of the Union shall be exempt from reasonable Company rules, regulations and expectations, from the authority of supervisors, or from the provisions of this Agreement. Neither the Company, the Union nor a driver will discriminate against, unlawfully harass or retaliate against a fellow worker, applicant for employment, passenger, or individual on account of race, color, religion, creed, sex, sexual orientation, age, marital status, disability, handicap, perceived disability, citizenship, national origin, union membership, or any other characteristic protected by state, federal, or local law.

Section 2:   The Company agrees to strive to maintain a working

environment free from discrimination, unlawful harassment and retaliation. The Company also will comply with all federal, state and local laws prohibiting discrimination, unlawful harassment and retaliation because of race, color, religion, creed, sex, sexual orientation, age, marital status, disability, handicap, perceived disability, citizenship, nation origin, union membership, or any other prohibited basis.

## ARTICLE 17-PENALTIES AND DISCHARGE

Any employee accused of misconduct shall be given a written notice of the alleged misconduct within ten (10) calendar days of the incident.

If any oral or written complaint is made by the public a written report of the complaint shall be given to the driver within ten (10) calendar days after the Employer receives such a complaint, provided, however, that no complaint shall be valid unless filed by the Employer within fifteen (15) days after the alleged violation occurred. The employee is required to cooperate in the Employer's investigation into any alleged violation.

The Employer shall require the employee to sign triplicate copies of the alleged violation or complaint, and shall provide the employee with one (1) copy, and one (1) copy shall be sent to local 853.

Since the signing of the copies of the alleged violation or complaint are not an admission of guilt but only admission of the receipt of the complaint, any employee refusing the notice will receive an automatic one (1) days suspension without pay.

If the Employer does not give the employee and the Union a written notice of the alleged violation or complaint, the Employer shall not place a copy of the alleged violation or complaint in future grievance hearings or any in dismissal or penalty hearing.

If any alleged violation or complaint is found during subsequent grievance or arbitration procedures to be not justified, the notice of the alleged violation or

complaint shall be removed from the employee's record.

Any employee requested to discuss any alleged violation or complaint with the Employer shall, at the option of the employee, be accompanied by s shop steward or other union official.

Except as provided in this Agreement, no employee shall be discharged or otherwise removed from the job unless he or she has received one (1) previous written warning notice for a similar offense within the past six(6) months. Such notices shall be effective for a period of six (6) months from the date of issuance.

No employee shall be penalized or discharged for any conduct occurring off the clock, except for offenses affecting work related activities.

Under direction from any client or customer, an employee may be removed from service of that client or customer if it is deemed the employee is not performing to the client or customer's satisfaction. The employee, however, may bid to work for another client or customer, unless the employee engaged in misconduct or actions warranting discharge from the Employer. If no positions are available with another client or customer, the employee will be deemed laid off.

An employee may be immediately disciplined and removed from the job( being paid only for the hours actually worked) for any of the following:

(e)     Threatening, harassing, discriminating behavior against a protected status, retaliating, intimidating, coercing or abusing fellow employees, passengers, customers, employees of a client or members of the public.

If the Employer is required to remove any employee at the client or customer's request, the Employer agrees to discuss the matter with the client or customer to attempt to adjust the problem. The Union may receive, upon request, a copy of the directive requiring the removal of the employee. Should the Employer decide to discipline the persons covered by this Agreement, such as disciplinary action would be subject to the grievance procedure. However, the requirement to remove the employee as requested in writing by the customer or its designee shall

not be subject to the Grievance procedure.

## ARTICLE 18-GRIEVANCE AND ARBITRATION

A Grievance is defined to be any controversy between the Company and the Union or a driver arising out of or by virtue of this Agreement.

Any complaints that the Company has violated the terms of the Agreement shall be reported to the Employer via a written Grievance within fifteen (15) calendar days after the Employee or the Union becomes aware of the alleged violation.

Any dispute between the Company and the Union regarding the interpretation or application of this Agreement, and disputes concerning proposed penalties or discharges, shall be taken up between the Company and the Union Business Representative. The Employee and/or the Union shall file a written Grievance with the Employees's immediate Supervisor, which must be received by the Company within fifteen (15) calendar days of (I) the incident complained of or (ii) first notice of the incident complained of by the Employee or the Union. At a minimum, the Grievance must identify the grievant, the issue(s) in detail.

## ARTICLE 31-DRIVER'S DUTIES AND RESPONSIBILITY

### Paragraph 5

Drivers will perform efficient service in their work; they will be attentive to their duties; they will observe and conform to the rules, regulations and reasonable expectations and standards of the Employer and its clients/customers; they will comply with the instructions and directions of the officials, officers and supervisors over them; they will fully cooperate in all investigations; and they will operate and handle the Company's equipment carefully, safely and with the upmost regard to safety of fellow workers, passengers, the general public and equipment entrusted to their care. Drivers will also give the riding public courteous and respectful treatment at all times; and they shall at all times use their influence and best endeavors to preserve and protect the interest of the

Company and cooperate in the promotion and advancement of the Company's interest. The Union and the drivers are responsible for assisting in promoting safe practices and compliance with the Company's work rules, standards and reasonable expectations.

## ARTICLE 37-MANAGEMENT RIGHTS

**Section 1:** The Union recognizes the exclusive right and responsibility of the Company to manage its facilities and to direct its workforces.

**Section 2:** The Company shall have the right to exercise full control and discipline in the interest of safe and efficient service and the conduct of its business; subject however, to the terms of the Agreement and to the Employees' privilege of presenting Grievances(s) as herein defined and provided for.

**Section 6:** If the Company is required to remove any Employee by the Client/Customer's request, the Employer agrees to discuss the matter with the Client/Customer to attempt to adjust the problem. The Union may receive upon request, a copy of the directive requiring the removal of the Employee. Should the Employer decide to discipline the persons covered by this Agreement, such disciplinary action would be subject to the Grievance procedure. However, the requirement to remove the Employee as requested by the customer or its designee shall not be subject to the Grievance Procedure.

### EMPLOYER POSITION

Arbitrators have long held that where the language of the Collective Bargaining Agreement is clear, the Arbitrator must give effect to the clear and plain meaning of the Language.

As the evidence at hearing demonstrates, the Union's Grievance must be denied

as the grievance is untimely. Even assuming *arguendo* that the Arbitrator rules on the merits of this case, the evidence demonstrates the Company properly removed the Grievant as a result of disqualification. The Grievant's termination was not a discharge for just cause, instead it was a discharge as a result of a lack of work or ineligibility to perform services for Compass. To rule otherwise would result in the modification of the parties' Collective Bargaining Agreement. Accordingly, the Grievance presented before this Arbitrator must be denied in its entirety.

## UNION POSITION

Progressive discipline is particularly appropriate here given the lack of any clear employer rule or training and the Grievant's affirmation that he is willing to revise his behavior, if necessary, and comply with any directives regarding passenger interactions.

Arbitrators recognize that proper discipline requires consistency in rule enforcement. Consistency requires rules be enforced evenhandedly and without discrimination. It also requires that the penalty imposed fro the rule violation be consistent with penalties imposed for similar offenses.

The Company's termination of the Grievant for inviting customers to look at his vacation photographs constitutes harsher treatment. As described above, other drivers socialize with passengers. The Company has never terminated an employee for developing personal relationships with passengers and has never before taken the position that an employee could be terminated for this conduct. The Company has not only tolerated but encouraged being friendly with passengers and never counseled the Grievant about his interactions with passengers. The Company's disparate treatment of the Grievant sharply deviating from its general approach belies just cause.

## ANALYSIS

Persona non grata is a longstanding theory in Arbitration which involves a third party demanding the removal or discharge of an employee and the Employer acquiescing to those demands. See Granny Goose Foods, 42 LA 497, 502 (Koven, 1964); Burns International Security, 98 LA 226 (Cox, 1991); Rebard Engineering Inc., 121 LA 1623 (Rider, 1995); First Student Inc., 121 LA 575 (McCurdy, 2005).

In Granny Goose Foods, Arbitrator Koven stated that an employer can be told by a third party that it must take certain actions against one of its employees and if it fails to do so, there could be an adverse or economically financial impact on the employer. Id. According to Elkouri & Elkouri How Arbitration Works 2008 Supplement:

> **'Persona non grata cases arise where the employee necessarily performs some of all of the tasks associated with his or her job on the premises of a third party, the third party becomes disenchanted with the employee for reasons that may or may not constitute "just cause" for disciplinary action under the labor agreement, and the third party then bars the employee from the premise'.**

Elkouri & Elkouri How Arbitration Works 2008 Supplement, P. 364.

In persona non grata cases, Arbitrators may consider whether the dispute is between the grievant and the third party; whether the employer acted in good faith when it complied with the third party's demand; whether there was collusion or a

conspiracy between the third party and the employer to circumvent the just cause provision of the agreement; whether the third party acted in good faith; and whether there was a clear and persuasive showing that the third party would no longer allow the grievant to work on the property and there was an adverse impact if the employer did not comply with the demands of the third party. Transport Drivers, Inc., 1997 LA Supp. 101989 (Hockenberry, 1997). None of those issues were challenged factually by the Grievant here.

In a similar case applying persona non grata, in Corley Distributing Company Inc., 68 LA 513 (Ipavic 1977), Arbitrator Ipavic determined that a beer distributor had the right to terminate a driver because the brewery, a third party, refused to allow the driver to pick up beer at the brewery's dock because the driver was accused of abusive conduct. More importantly, in Arbitrator Ipavic's decision, he compared the event to a layoff and not a disciplinary termination. Arbitrator Ipavic upheld the termination of the employee as he determined that the Grievant's employment was rightfully terminated due to the hauler position no longer being available to the Grievant.

In Cobb County Transit and ATU LOCAL 732 134 LA 1573 (Horn, 2015), Arbitrator Horn more recently held that it was the employee's responsibility to maintain his eligibility to perform the job and explained :

> While just cause is the Employer's responsibility to satisfy in a discharge case,

retaining one's basic qualification(s) for continued employment is solely the responsibility of the Employee. The Employee's privilege of continuing to work is based upon that employee's compliance with the expectations of the Employer that the employee will maintain their licensure, and "qualification" to continue to work for the Employer. Disqualification by an Employee can result from many things, including lack of physical ability to do the job, loss of licensure, or rejection by customers and/or clients. For example, a Collective Bargaining Agreement covers a group of Employees that are employed under only one contract, the customer's designation of a particular Employee ineligible for future service is traditionally known as the "Persona Non Grata" doctrine. In such cases, the loss of the Employer's ability to assign work to that employee fails to maintain his or her qualification for purpose of continued service, neither due process nor just cause can prevent that employee from loss of employment. It is the Employee's sole obligation to maintain his or her qualified status in such a fashion as to continue to be "qualified" for continued employment. To find otherwise would jeopardize the job security of all of the members covered by any Collective Bargaining Agreement, a result which neither of the parties to this Arbitration intended.

Here too, the Grievant became disqualified due to the fact that there were no bus driver positions available to him due to two clients/customers demanding his immediate removal from their accounts. The Grievant had a responsibility to

maintain his eligibility to continue providing satisfactory services for the Company's clients and his failure to do so resulted in his separation from employment. The Company did not need to meet the standard for termination of the Grievant's employment because of misconduct, even though his alleged and partially admitted behavior was a violation of the Driver Manifesto and multiple provisions of the parties' Agreement; rather, the Company properly terminated his employment due to his persona non grata disqualification. Nothing in the contract was triggered which required the employer to "find" work thereafter for the Grievant.

The Employer also raised the issue of timeliness of the Grievance. Insofar as the Employer bears the burden of proof on that issue when raised, it has not met its burden in this case and I find the Grievance is timely and properly before me.

## AWARD

## GRIEVANCE OF MICHAEL HENDERSON IS DENIED

Respectfully submitted;

*[signature]*

David B. Hart
Arbitrator

Signed and dated this 15th day of July, 2019.

- 12 -